**HALPER SADEH LLP**
Zachary Halper, Esq.
36 Kingston Run
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARC ROTH,<br><br>        Plaintiff,<br><br>    v.<br><br>TD AMERITRADE HOLDING CORPORATION, JOSEPH H. MOGLIA, STEVE BOYLE, LARRY BETTINO, ANN HAILEY, BRIAN LEVITT, KAREN E. MAIDMENT, BHARAT MASRANI, IRENE MILLER, MARK L. MITCHELL, WILBUR J. PREZZANO, TODD M. RICKETTS, and ALLAN R. TESSLER,<br><br>        Defendants. | Case No:<br><br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Marc Roth ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is an action against TD Ameritrade Holding Corporation ("TD Ameritrade" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of TD Ameritrade by The Charles Schwab Corporation ("Schwab") and Americano Acquisition Corp. ("Merger Sub"), a wholly owned subsidiary of Schwab.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company conducts business and has operations in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of TD Ameritrade's common stock.

7.      Defendant TD Ameritrade provides securities brokerage and related technology-based financial services to retail investors and traders, and independent registered investment advisors in the United States. The Company is incorporated in Delaware and operates branches

throughout New Jersey. The Company has substantial corporate operations in Jersey City, New Jersey. The Company's common stock trades on the NASDAQ Global Select Market under the ticker symbol, "AMTD."

8.      Defendant Joseph H. Moglia ("Moglia") is Chairman of the Board of the Company.

9.      Defendant Steve Boyle ("Boyle") is Interim President, Chief Executive Officer ("CEO"), and a director of the Company.

10.      Defendant Larry Bettino ("Bettino") is a director of the Company.

11.      Defendant Ann Hailey ("Hailey") is a director of the Company.

12.      Defendant Brian Levitt ("Levitt") is a director of the Company.

13.      Defendant Karen E. Maidment ("Maidment") is a director of the Company.

14.      Defendant Bharat Masrani ("Masrani") is a director of the Company.

15.      Defendant Irene Miller ("Miller") is a director of the Company.

16.      Defendant Mark L. Mitchell ("Mitchell") is a director of the Company.

17.      Defendant Wilbur J. Prezzano ("Prezzano") is a director of the Company.

18.      Defendant Todd M. Ricketts ("Ricketts") is a director of the Company.

19.      Defendant Allan R. Tessler ("Tessler") is a director of the Company.

20.      Defendants Moglia, Boyle, Bettino, Hailey, Levitt, Maidment, Masrani, Miller, Mitchell, Prezzano, Ricketts, and Tessler are collectively referred to herein as the "Individual Defendants."

21.      Defendants TD Ameritrade and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

22.     Schwab, through its subsidiaries, provides wealth management, securities brokerage, banking, asset management, custody, and financial advisory services. Schwab is incorporated in Delaware with principal executive offices located in San Francisco, CA. Schwab's common stock trades on The New York Stock Exchange under the ticker symbol, "SCHW."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

23.     On November 25, 2019, TD Ameritrade and Schwab issued a press release announcing that they had entered into a definitive agreement whereby TD Ameritrade shareholders would receive 1.0837 Schwab shares for each TD Ameritrade share. The press release states, in pertinent part:

**The Charles Schwab Corporation to Acquire TD Ameritrade**

**Transaction to Combine Two Award-Winning Companies**

**Combined Firms Projected to Serve 24 Million Brokerage Accounts with more than $5 Trillion in Client Assets**

**Complementary Firms Share Heritage of Innovation and Client-Focused Cultures**

November 25, 2019 06:00 AM Eastern Standard Time

SAN FRANCISCO & OMAHA, Neb.--(BUSINESS WIRE)--The Charles Schwab Corporation ("Schwab") and TD Ameritrade Holding Corporation ("TD Ameritrade") today announced that they have entered into a definitive agreement for Schwab to acquire TD Ameritrade in an all-stock transaction valued at approximately $26 billion. Under the agreement, TD Ameritrade stockholders will receive 1.0837 Schwab shares for each TD Ameritrade share, which represents a 17% premium over the 30-day volume weighted average price exchange ratio as of November 20, 2019.

\*       \*       \*

4

The combination brings together two leading firms with proud and similar histories of making investing more accessible to all. More than 40 years ago, Schwab and TD Ameritrade started out as alternatives to traditional Wall Street brokerages. They helped lead a revolution to become the preferred model for full-service investing among tens of millions of direct investors and the go-to providers of custodial and consulting services for thousands of independent investment advisors. The firms' mutual respect and complementary cultures will help Schwab successfully integrate TD Ameritrade into its future operations.

With today's announcement, the TD Ameritrade Board of Directors has suspended its previously disclosed CEO search, naming Stephen Boyle, TD Ameritrade EVP and CFO, as the company's interim President and CEO. Mr. Boyle will assume leadership of the company effective immediately, guiding its management team through its fiscal 2020 plan and the proposed integration with Schwab.

* * *

The transaction has been unanimously approved by the Boards of Directors of Schwab and TD Ameritrade, as well as the Strategic Development Committee of TD Ameritrade's Board—a committee comprised solely of outside, independent directors that was established by the Board of Directors of TD Ameritrade to oversee and conduct the process and all negotiations concerning the transaction on behalf of the Board. Post-closing, The Toronto-Dominion Bank ("TD Bank"), which currently holds approximately 43% of TD Ameritrade's common stock, will have an estimated aggregate ownership position of approximately 13% in the combined company, with other TD Ameritrade stockholders and existing Schwab stockholders holding approximately 18% and 69%, respectively. TD Bank's voting stake will be capped at 9.9%, with the balance of its position held in a new, non-voting class of Schwab common stock. Additional details regarding stockholder matters, including upcoming votes, will be provided in the subsequent merger proxy materials.

In addition, this transaction included a renegotiation of the Insured Deposit Account (IDA) agreement by Schwab and TD Bank, to be effective at closing. The agreement was extended for a 10-year term beginning in 2021, and the servicing fee paid by Schwab on balances within the IDA was reduced by 10 basis points. Over time, Schwab will have the option to reduce balances routed to the IDA sweep program, subject to certain restrictions. This arrangement provides flexibility to optimize related revenue as those balances are shifted to Schwab.

With anticipated synergies, the deal is expected to be 10-15% accretive to GAAP EPS and 15-20% accretive to Operating Cash EPS in year three, post-close. Focusing on expenses, current estimates are for approximately $1.8 to $2 billion run-rate expense synergies, which represents approximately 18-20% of the combined cost base. Some of the expense synergies the combined firm expects to realize will come from elimination of overlapping and duplicative roles. Additional

synergies are expected to be achieved through real estate, administrative and other savings. Details on these synergies will be shared at a later date, once the integration process is underway.

The transaction is subject to customary closing conditions, including receipt of applicable regulatory approvals and approval by the stockholders of both companies. Closing is also subject to a "majority of the minority" TD Ameritrade stockholder approval condition, which means that the transaction must be approved by holders of a majority of the outstanding TD Ameritrade shares, other than TD Bank and certain other shareholders of TD Ameritrade that have entered into voting agreements. TD Bank and certain stockholders of TD Ameritrade (who collectively own approximately 52% of the TD Ameritrade shares), and certain stockholders associated with Charles R. Schwab (who own approximately 10% of the Schwab shares), have agreed to vote their shares in favor of the transaction. The parties expect the transaction to close in the second half of 2020, and integration efforts to begin immediately thereafter.

Following the close of the transaction, TD Bank will have the right to name two new seats on the Schwab Board of Directors and TD Ameritrade will name a single director.

Credit Suisse Securities (USA) LLC served as financial advisor and Davis Polk & Wardwell LLP acted as legal advisor to The Charles Schwab Corporation. PJT Partners LP and Sandler O'Neill + Partners LP served as financial advisors and Wachtell, Lipton, Rosen & Katz acted as legal advisor to the Strategic Development Committee of the Board of Directors of TD Ameritrade.

\*       \*       \*

**About TD Ameritrade**

TD Ameritrade provides investing services and education to approximately 12 million client accounts totaling approximately $1.3 trillion in assets, and custodial services to more than 7,000 registered investment advisors. TD Ameritrade is a leader in U.S. retail trading, executing an average of approximately 800,000 trades per day, more than a quarter of which come from mobile devices. The company has a proud history of innovation, dating back to its start in 1975, and today its team of 10,000-strong is committed to carrying it forward, leveraging the latest in cutting edge technologies and one-on-one client care to transform lives, and investing, for the better. Learn more by visiting TD Ameritrade's newsroom at www.amtd.com, and reading stories at Fresh Accounts.

**About Charles Schwab**

The Charles Schwab Corporation (NYSE: SCHW) is a leading provider of financial services, with more than 365 offices and 12.1 million active brokerage accounts,

1.7 million corporate retirement plan participants, 1.4 million banking accounts, and $3.77 trillion in client assets as of September 30, 2019. Through its operating subsidiaries, the company provides a full range of wealth management, securities brokerage, banking, asset management, custody, and financial advisory services to individual investors and independent investment advisors. Its broker-dealer subsidiary, Charles Schwab & Co., Inc. (member SIPC, https://www.sipc.org), and affiliates offer a complete range of investment services and products including an extensive selection of mutual funds; financial planning and investment advice; retirement plan and equity compensation plan services; referrals to independent, fee-based investment advisors; and custodial, operational and trading support for independent, fee-based investment advisors through Schwab Advisor Services. Its banking subsidiary, Charles Schwab Bank (member FDIC and an Equal Housing Lender), provides banking and lending services and products. More information is available at https://www.schwab.com and https://www.aboutschwab.com.

24.     On March 10, 2020, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

25.     The Registration Statement, which recommends that TD Ameritrade shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's and Schwab's financial projections; (ii) the financial analyses performed by the Company's strategic development committee's[1] financial advisors, PJT Partners LP ("PJT Partners") and Piper Sandler & Co. ("Piper Sandler"), in connection with their fairness opinions; and (iii) potential conflicts of interest involving PJT Partners and Piper Sandler.

26.     The omission of the material information (referenced below) renders the following

---

[1] According to the Registration Statement, "the TD Ameritrade board of directors designated the strategic development committee . . . [consisting of] Mr. Allan R. Tessler, as chairman, and Ms. V. Ann Hailey and Mr. Mark L. Mitchell as the other members of the committee, to consider and evaluate the potential transaction." Further, "the strategic development committee retained . . . Piper Sandler as a financial advisor, in addition to PJT Partners, which it had previously retained as a financial advisor."

sections of the Registration Statement false and misleading, among others: (i) TD Ameritrade's Reasons for the Merger; Recommendation of the Strategic Development Committee and the TD Ameritrade Board of Directors; (ii) Opinions of the Strategic Development Committee's Financial Advisors; and (iii) Unaudited Prospective Financial Information.

27.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote, TD Ameritrade shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1.  Material Omissions Concerning TD Ameritrade's and Schwab's Financial Projections**

28.     The Registration Statement omits material information concerning TD Ameritrade's and Schwab's financial projections.

29.     The Registration Statement purports to provide a summary of the "TD Ameritrade projections for TD Ameritrade" and the levered free cash flows derived therefrom (the "TD Ameritrade Projections"). The TD Ameritrade Projections consist of three sets of TD Ameritrade's financial projections for calendar years 2020 through 2023.

30.     The Registration Statement, however, fails to disclose the following concerning the TD Ameritrade Projections: (1) all line items used to calculate (i) adjusted net income, and (ii) levered free cash flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

31.     The Registration Statement purports to provide a summary of (i) the "Schwab projections for Schwab," consisting of prospective financial information relating to Schwab for the years ending December 31, 2019 through December 31, 2024; and (ii) the "Schwab projections for TD Ameritrade," consisting of prospective financial information relating to TD Ameritrade for

the years ending December 31, 2019 through December 31, 2024 (collectively, the "Schwab Projections").

32.     The Registration Statement, however, fails to disclose the following concerning the Schwab Projections: (1) all line items used to calculate (i) non-GAAP adjusted earnings per share, (ii) distributable cash flows, (iii) adjusted EBITDA, (iv) non-GAAP adjusted net income, (v) non-GAAP adjusted earnings per share, (v) levered free cash flows, and (vi) unlevered free cash flows; and (2) a reconciliation of all non-GAAP to GAAP metrics.

33.     With respect to the Schwab projections for the combined company, the Registration fails to disclose all line items used to calculate distributable cash flows.

34.     The disclosure of the Company's and Schwab's projected financial information is material because it would provide TD Ameritrade shareholders with a basis to project the future financial performance of TD Ameritrade and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by the Company and its financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

35.     When a company discloses non-GAAP financial metrics in a Registration Statement that was relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the

non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[2]

36.     Accordingly, in order to bring the Registration Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of the Projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Registration Statement not misleading.

37.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to TD Ameritrade shareholders.

## 2. Material Omissions Concerning PJT Partners' and Piper Sandler's Financial Analyses

38.     In connection with the Proposed Transaction, the Registration Statement omits material information concerning the analyses performed by PJT Partners and Piper Sandler.

39.     The Registration Statement fails to disclose the following concerning PJT Partners' and Piper Sandler's "*Discounted Equity Cash Flow Analysis—TD Ameritrade*": (1) the terminal

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Mar. 30, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

values of TD Ameritrade as of December 31, 2023; (2) the individual inputs and assumptions underlying the (i) exit multiple range of 12.0x to 14.0x, (ii) implied perpetuity growth rate of 1.5%, and (iii) discount rates ranging from 8.5% to 10.5%; and (3) the fully diluted number of shares of TD Ameritrade common stock as of November 19, 2019.

40.     The Registration Statement fails to disclose the following concerning PJT Partners' and Piper Sandler's "*Discounted Equity Cash Flow Analysis/Net Present Value Analysis—Schwab*": (1) the ranges of terminal values of Schwab as of December 31, 2023; (2) the individual inputs and assumptions underlying the (i) exit multiple range of 15.5x to 17.5x, (ii) price to 2023E earnings per share multiples ranging from 15.0x to 19.0x, (iii) implied perpetuity growth rate of 3.2%, and (iv) discount rates ranging from 8.5% to 10.5% and 7.92% to 11.92%; and (3) the fully diluted number of shares of Schwab common stock as of November 19, 2019.

41.     The Registration Statement fails to disclose the number of fully diluted shares of Schwab common stock outstanding after giving effect to the merger as utilized by PJT Partners and Piper Sandler in their "*Illustrative Pro Forma Value Creation Analysis*[.]"

42.     With respect to PJT Partners' and Piper Sandler's analyses of Wall Street research analysts' standalone stock price targets for the common stock of TD Ameritrade and Schwab, the Registration Statement fails to disclose: (1) the individual price targets for TD Ameritrade and Schwab as observed by PJT Partners and Piper Sandler in their analyses; and (2) the sources of those price targets.

43.     With respect to PJT Partners' and Piper Sandler's analyses of selected precedent transactions and the premiums paid therein, the Registration Statement fails to disclose: (1) the transactions observed by PJT Partners and Piper Sandler in their analyses; (2) the rationale as to why those transactions were selected; and (3) the individual premiums paid in each of the

transactions.

44.     The valuation methods, underlying assumptions, and key inputs used by PJT Partners and Piper Sandler in rendering their purported fairness opinions must be fairly disclosed to TD Ameritrade shareholders. The description of PJT Partners' and Piper Sandler's fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without the information described above, TD Ameritrade shareholders are unable to fully understand PJT Partners' and Piper Sandler's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to TD Ameritrade shareholders.

### 3.     Material Omissions Concerning Potential Conflicts of Interest Involving PJT Partners and Piper Sandler

45.     The Registration Statement omits material information concerning potential conflicts of interest involving PJT Partners and Piper Sandler.

46.     The Registration Statement provides that "PJT Partners is entitled to receive from TD Ameritrade . . . additional compensation upon the closing of the merger, the amount of which will be determined using a formula incorporating the exchange ratio and the trading price of Schwab common stock during a certain time period prior to closing of the merger."

47.     Similarly, the Registration Statement provides that "Piper Sandler . . . will receive a fee for [its] services, . . . [a portion of which is] payable and contingent upon the closing of the merger [and] will be determined using a formula incorporating the exchange ratio and the trading price of Schwab common stock during a certain time period prior to closing of the merger."

48.     The Registration Statement, however, fails to disclose the precise compensation PJT Partners and Piper Sandler are expected to be paid as calculated using the exchange ratio and

trading price of Schwab common stock during a certain time period prior to the closing of the merger, as well as the specific inputs used to calculate that compensation. Without this information, TD Ameritrade shareholders are unable to determine the amount of this potential compensation and how those figures were derived.

49.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

50.     The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to TD Ameritrade shareholders.

<u>COUNT I</u>
**For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder**
**<u>Against All Defendants</u>**

51.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

53.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the

mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

54.     The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

55.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

56.     Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

<u>**COUNT II**</u>
**Violations of Section 20(a) of the Exchange Act**
<u>**Against the Individual Defendants**</u>

57.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

59.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

60.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with and/or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

61.     In addition, as the Registration Statement sets forth at length, and as described herein, certain Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

62.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63.     As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.


Dated: March 30, 2020                                        Respectfully submitted,

                                                                          **HALPER SADEH LLP**

/s/ Zachary Halper
Zachary Halper, Esq.
36 Kingston Run
North Brunswick, NJ 08902
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: zhalper@halpersadeh.com

Daniel Sadeh, Esq. (*pro hac vice* application
forthcoming)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*